STEWART *v.* STATE

[No. 333, September Term, 1962.]

320

*Decided July 18, 1963.*

The cause was first argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, MARBURY and SYBERT, JJ., and reargued be-
fore the full Court.

*George L. Russell, Jr.* (on both arguments) for the appel-
lant.

*Richard M. Pollitt, Special Attorney* (on both arguments),
with whom were *Thomas B. Finan, Attorney General, William
J. O'Donnell, State's Attorney for Baltimore City,* and *Stan-
ley S. Cohen, Assistant State's Attorney,* on the brief, for the
appellee.

HAMMOND, J., delivered the opinion of the Court.

Stewart, the appellant, was convicted of having possession
and control of narcotics. He argues that the evidence showed
that, as a matter of law, he had been entrapped, that he was
not a principal, only an agent whose possession and control
were those of the principal, a federal narcotic officer, and that
incriminating statements he made were inadmissible because
uttered while he was in custody after an illegal arrest.

A federal narcotics agent named Notel and an informer drove
to Eutaw Place, Baltimore, where appellant, whom they knew

as a previous offender, was found. The agent asked appellant if he had any narcotics, and the reply was that he did not but could get some. The agent then gave appellant $24.00 of government funds to purchase two packages of narcotics for $12.00 each. Appellant directed them to drive him to Pennsylvania Avenue and Dolphin Street where he left the car and disappeared, returning in fifteen minutes. The three then drove back to Eutaw Place where appellant produced two small envelopes, each containing white powder, which subsequent analysis proved to be heroin hydrochloride, a narcotic drug. Appellant kept half of the contents of one envelope for himself and delivered the rest to the agent.

Eight days later appellant was arrested on the street by a police officer of the Baltimore City narcotics squad, who had no warrant and saw no crime committed in his presence. Although appellant was told at the time that he was being taken to headquarters for investigation, the crimes for which he was arrested and of which he was convicted were misdemeanors. The State conceded that the arrest was illegal.

The agent testified he saw appellant in Captain Carroll's office (Captain Carroll is head of the Baltimore City narcotics squad) soon after the arrest and said: "I identified myself as an agent and * * * asked Mr. Stewart if he remembered me; he said, yes. * * * I then asked if he remembered making a sale of narcotics to me or getting the narcotics to me on October the 9th and he said, yes." The arresting officer said that when he talked to Stewart in Captain Carroll's office after the arrest: "I asked him, I stated to him the facts concerning the sale which took place on the 10th [October 9th] * * * and he said he sold the heroin to Agent George Notel." When asked what else he said to appellant, the officer replied: "That is all I said."

There is no merit to the defense of entrapment. It is permissible for a law enforcement officer to lay a trap or join in common effort with another or others to detect a violation of law. *Baxter v. State,* 223 Md. 495, *cert. den.* 366 U. S. 968; *Matthews v. State,* 228 Md. 401. The record shows no more than this here. There was no repeated and persistent solicitation of a previously law abiding citizen in order to overcome his reluctance to commit a crime. There was only the permis-

sible offering of an opportunity to a known offender to exercise his predisposition to violate the law. See *Whyte v. State,* 229 Md. 459, and *Lane v. State,* 226 Md. 81, 87, 88.

The defense that appellant was no more than an agent is based on the case of *United States v. Prince* (3rd Cir.), 264 F. 2d 850, in which it was held that the defendant, accused of the sale of narcotics, was entitled to a jury instruction that if he merely acted for the narcotic agent and the informer in purchasing the drug "from a third person with whom he was not associated in selling and thereafter delivered it to the buyer," the defendant could not be convicted as a seller.

Here the appellant was not charged with selling. If he had been and had acted only as a delivery man, the theory of the prayer in the *Prince* case might be applicable. The appellant was charged with possession and control. The *Prince* case was held not controlling, since it dealt only with a sale, in *Vasquez v. United States* (9th Cir.), 290 F. 2d 897, 899, where the charge was transporting or facilitating the transportation of narcotics. The Court said: "One may be convicted of transporting or facilitating the transportation of narcotics without having committed the act of selling." In *United States v. Sawyer* (3rd Cir.), 210 F. 2d 169, 170, cited in *Prince,* the Court said: "The government having elected to charge the defendant with the crime of sale rather than illegal possession, the jury should have been alerted to the legal limitations of the sales concept * * *."

In the case before us there is no showing the appellant was not acting for himself in having possession and control of narcotics. It is undisputed that he retained, as his own, half of the drug in one envelope. The defense of the appellant that he was only an agent must fail on the facts, if for no other reason.

In *Prescoe v. State,* 231 Md. 486, we held that a confession, which was explicitly conceded in open court to have been voluntary, was not made inadmissible solely because it was given while the accused was in custody after an illegal arrest. To avoid the effect of *Prescoe,* appellant argues that his statements were not confessions but admissions and that the rule as to admissions differs from that controlling confessions, so that

an admission made during unlawful custody is "a fruit of the poisonous tree" and inadmissible, just as are objects seized in the course of a search following an illegal arrest.

In our view an admission made while in custody after an illegal arrest is no more inadmissible for that reason alone than a confession made in similar circumstances.

A confession is a species of admission, that is to say, an admission that says or necessarily implies that the matter confessed constitutes a crime. An admission which is not a confession is an acknowledgment of some fact or circumstance which, in itself, is insufficient to authorize a conviction but which tends to establish the ultimate fact of guilt. *Merchant v. State,* 217 Md. 61, 69. See also *Vincent v. State,* 220 Md. 232.

The authorities have differed as to whether an admission is subject to the same requirements concerning voluntariness as a confession in order to be admissible. For the view that the requirements are not the same, see *Commonwealth v. Dascalakis* (Mass.), 137 N. E. 879; *State v. Romo* (Ariz.), 185 P. 2d 757; 3 *Wigmore, Evidence* (3rd Ed.), Sec. 821, p. 243, n. 4.

The contrary view, that an admission must be tested by the same standard of voluntariness as a confession, in determining its admissibility, has been said to be more likely to bring about a just result and to be more consonant with current trends of impartiality in practice in criminal prosecutions. *Ashcraft v. Tennessee,* 327 U. S. 274, 90 L. Ed. 667 (but compare *Stein v. New York,* 346 U. S. 156, 97 L. Ed. 1522); *Anderson v. United States,* 318 U. S. 350, 87 L. Ed. 829; *People v. Hiller* (Ill.), 118 N. E. 2d 11; *State v. Nagle* (R. I.), 54 A. 1063; *McCormick, Evidence,* Sec. 113, pp. 235-236; *A. L. I. Model Code of Evidence,* Rule 505, p. 239.

In some Courts the fact that the admission was of a subsidiary fact only has been used to justify admissibility without a showing of voluntariness. 2 *Wharton, Criminal Evidence* (12th Ed.), Sec. 398, p. 146.

We take the preferable rule to be that an admission which is significantly incriminating but short of a confession must, like a confession, have been made voluntarily and without improper inducement to be evidence against the accused.

When an admission is in substance a partial confession or,

in the words of Chief Judge Bond for the Court in *Markley v. State,* 173 Md. 309, 314, is a statement "in the nature of a confession," there must be considered the same potential danger of coercion as in the case of a confession. The less incriminating the admission, the less the likelihood that it was obtained by coercion or inducement. 2 *Wharton, op. cit.,* Sec. 398, p. 147.

This Court in practice has consistently applied to admissions the test of voluntariness. *Cothron v. State,* 138 Md. 101; *Frank v. State,* 189 Md. 591, 595; *Curreri v. State,* 199 Md. 54, 57; *McGuire v. State,* 200 Md. 601, 609, *cert. den.* 344 U. S. 928; *Zerwitz v. State,* 205 Md. 357, 361; *Merchant v. State,* 217 Md. 61, 69; *Felkner v. State,* 218 Md. 300, 311; *Robinson v. State,* 225 Md. 300. *Cf. Cooper v. State,* 220 Md. 183; *Glaros v. State,* 223 Md. 272.

In *Delnegro v. State,* 198 Md. 80, 87, it was said that the burden is on the State to show that a confession was freely and voluntarily made and was not obtained by improper inducements, and it was held that a statement by a defendant in a raided bookmaking establishment that he worked on the adding machines (in the form of a reply to a question), "was manifestly voluntary and was an admission, not a confession of guilt." It was then said: "The rule for the admission of a confession in evidence is not applicable to an admission." The last statement would not seem to have been necessary to the decision since it had already been held that the statement was voluntary. We think the case means only that the requirement on the. State to show preliminarily to the judge, before its admission, that a confession is voluntary—unless the fact is conceded—does not apply to an admission. In many of the cases cited above in which the test of voluntariness was applied to admissions, including *Frank, Curreri, McGuire, Zerwitz* and *Felkner,* there was no preliminary showing by the State of voluntariness, and the admissions were held to be admissible because in fact voluntary. In *Henze v. State,* 154 Md. 332, 347, in considering whether testimony given by the accused at a former trial could be used against him, the Court said such testimony must have been voluntarily given to be admissible, "and where there is no evidence to the contrary; it will be

presumed that the evidence so given was voluntary." See *United States v. Lerner*, 35 F. Supp. 271, in which Judge Chesnut held that an admission given voluntarily by an accused could be used against him. See also *People v. Wynekoop* (Ill.), 194 N. E. 276, 279; *State v. Ludwick* (Mont.), 300 P. 558; *State v. Bock* (Ida.), 328 P. 2d 1065, 1072, for the proposition that it is not necessary to lay a foundation showing that admissions were made voluntarily to warrant their introduction into evidence.

There was no contention below and there is none here that Stewart's replies to the agent and the policeman that he had sold the heroin were not made entirely voluntarily, or were improperly induced. The colloquies between Stewart and the agent and the policeman, respectively, almost demonstrate that Stewart's statements were spontaneous, and casually given.

The statements may not have been technically confessions since they did not admit possession or control, the crimes charged (cf. *Zerwitz* and *Merchant, supra*), but they were so incriminating that they were in the nature of a confession and to have been evidence against Stewart must have been voluntary.

Perhaps because the statements so clearly were voluntary, the basis of the objection below to their admission was, and the argument here is, that they were the product of an illegal arrest.

The holding of *Prescoe* that the critical test of the admissibility of a confession is its voluntariness, and that it is not involuntary merely because it was made after an illegal arrest, is applicable to and controls the case of a statement in the nature of a confession. Voluntariness in fact is the determinative for both. In *Zerwitz* the statement under attack was considered and treated by this Court as an admission, and the opinion said (p. 361 of 205 Md.) : "Even if the arrest were illegal, this fact would not render the statement inadmissible." *Frank v. State, supra,* in which the statement would seem to have fallen short of a confession, and *Courtney v. State,* 187 Md. 1, 6, in which the statement was a confession, were cited in support of the proposition.

Since the statements of Stewart were voluntarily made, with-

out improper inducement, they were admissible in evidence against him.

We find no prejudicial error in appellant's trial.

*Judgment affirmed.*

BRUNE, C. J., filed the following dissenting opinion.

As in *Prescoe v. State,* 231 Md. 486, 191 A. 2d 226, statements made by the defendant during an unlawful arrest were admitted in evidence over objection. Here the statements were made very soon after the arrest and here there was no concession as there was in *Prescoe* that they met the ordinary test of voluntariness. That concession did not seem to me in *Prescoe* to make the statement admissible, if it were the product of an unlawful arrest, as I thought it was. Nor does it matter here, in my estimation, that the evidence supports a finding that the statements here in issue were voluntary. My view in *Prescoe* was based upon my understanding of the effect of several decisions of the Supreme Court of the United States cited in my dissenting opinion. The final determination of the question in that case and in this lies not with this Court, but with the Supreme Court, where I understand that review is being or will be sought in *Prescoe* and presumably in this case. In such circumstances, and considering that both cases were pending and were argued in this Court within a rather short time of each other, I think it appropriate to note my dissent in this case upon the grounds stated in my dissent in the *Prescoe* case. I accordingly do so.

I find nothing in *Ker v. California,* 374 U. S. 23, 83 S. Ct. 1623 (1963), decided since *Prescoe,* which leads me to alter the views which I stated in *Prescoe.*

PRESCOTT, J., filed the following dissenting opinion.

As I did not dissent in *Prescoe v. State,* 231 Md. 486, and the majority opinion herein states that the ruling in that case controls the result herein, it necessarily means that to me the cases are distinguishable.

In the very recent case of *Haynes v. Washington,* 373 U.S. 503, the Supreme Court reaffirmed the principle that the test in each case of the admissibility of a confession is whether "the de-

fendant's will was overborne at the time he confessed," citing *Lynumn v. Illinois,* 372 U.S. 528; and the Court went on to state further that "the true test of admissibility is that the confession is made freely, voluntarily and without compulsion or inducement of any sort," citing *Wilson v. United States,* 162 U.S. 613 and *Bram v. United States,* 168 U.S. 532. The Court then held that the undisputed testimony showed that the confession admitted therein was obtained "under a totality of circumstances evidencing an involuntary written admission of guilt." This case, I think, was controlling in *Prescoe,* wherein the State conceded the illegality of the arrest and the appellant flauntingly admitted that the confession was freely and voluntarily made, but contended that it could not be admitted in evidence against him on the sole ground that it was made while he was being illegally detained. I concede that the phrase "under a totality of circumstances evidencing an involuntary * * * admission of guilt" is not, as yet, capable of precise definition or application, and probably, is not intended to be. This, of course, means that the facts and surrounding circumstances of each case must control.

In the instant case, the State conceded that the arrest was illegal (the sale to the officer took place a week before the arrest; it would have been a very simple matter to have obtained an arrest warrant). The charge was a misdemeanor. And the confession was made very shortly after the arrest. In *Wong Sun v. United States,* 371 U.S. 471, a statement made by Toy shortly after his unlawful arrest was held to have been wrongfully admitted, because it was the "fruit" of official illegality. In the case at bar, there is no *concessum* that the confession was freely and voluntarily made as in *Prescoe;* in fact, the usual questions concerning threats, promises or inducements, *Cox v. State,* 192 Md. 525, 536, were not propounded by the State. Yet, the majority hold that the confession was spontaneously and voluntarily made. I think the testimony shows the confession to be very similar to that of Toy; therefore, I do not believe it should have been admitted.